IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 7 |
| | : | |
| DANIEL A. MARSHMAN | : | BANKRUPTCY NO. 24-13199 (AMC) |
| | : | |
| Debtor | : | |
| | : | |

OBJECTION OF LYNN E. FELDMAN, CHAPTER 7 TRUSTEE,
TO DEBTOR'S MOTION TO CONVERT CASE FROM A PROCEEDING
UNDER CHAPTER 7 TO A PROCEEDING UNDER CHAPTER 13

Lynn E. Feldman, Chapter 7 Trustee (the "Trustee") for the estate of Daniel A. Marshman (the "Debtor"), by and through her counsel, Karalis PC, hereby objects (the "Objection") to the Debtor's Motion to Convert Case from a Proceeding Under Chapter 7 to a Proceeding Under Chapter 13 (the "Motion"), and in support thereof, respectfully represents as follows:

JURISDICTION

1. This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

2. The statutory basis for the relief requested in the Motion is 11 U.S.C. § 706(a).

BACKGROUND

A. **Procedural Background.**

3. On September 11, 2024 (the "Petition Date"), the Debtor filed for protection under Chapter 7 of the Bankruptcy Code.

4. On September 12, 2024, the Trustee was appointed which appointment remains in effect.

B. **The Residential Real Property Co-Owned by the Debtor's Bankruptcy Estate.**

5. The Debtor's bankruptcy estate co-owns residential real property located at 421 7th

Avenue, Parkesburg, PA 19365 (the "Real Property").

6. The Real Property is co-owned by the Debtor's bankruptcy estate and the Debtor's wife, Lisa Marshman ("Mrs. Marshman"), as tenants by the entireties. The Debtor's Schedule A/B: Property filed on October 23, 2024 [D.I. 19] is attached hereto as Exhibit "1" and made a part hereof.

7. The Debtor asserts that the Real Property has a fair market value of $491,000.00. *See*, Exhibit "1".

8. The Real Property is encumbered by one mortgage in the approximate amount of $298,000.00. The Debtor's Schedule D: Creditors Who Have Claims Secured by Property filed on October 23, 2024 [D.I. 19] is attached hereto as Exhibit "2" and made a part hereof.

9. As such, there appears to be significant equity in the Real Property for the benefit of the Debtor's bankruptcy estate.

## C. The Exemption Claimed by the Debtor in the Real Property.

10. On October 23, 2024, the Debtor filed his Schedule C: The Property You Claim as Exempt [D.I. 19]. The Debtor's Schedule C: The Property You Claim as Exempt is attached hereto as Exhibit "3" and made a part hereof.

11. In the Schedule C, the Debtor has claimed the following exemption in the Real Property:

| BRIEF DESCRIPTION OF THE PROPERTY AND LINE ON SCHEDULE A/B THAT LISTS THIS PROPERTY | CURRENT VALUE OF THE PORTION YOU OWN | AMOUNT OF THE EXEMPTION YOU CLAIM | SPECIFIC LAWS THAT ALLOW EXEMPTION |
|---|---|---|---|
| 421 &th [sic] Ave Parkesburg, PA 19365 | $491,000.00 | $193,519.00 | 11 U.S.C. § 522(b)(3)(B) |

*See*, Exhibit "3".

12. As such, the Debtor is claiming the state and federal non-bankruptcy exemptions

2

under 11 U.S.C. § 522(b)(3) as the Real Property is co-owned by the Debtor and Mrs. Marshman as entireties property.

**D.    The Joint Debt.**

13.    The Debtor's Schedule E/F: Creditors Who Have Unsecured Claims reflects that there are no joint obligations owed by the Debtor and Mrs. Marshman. The Debtor's Schedule E/F: Creditors Who Have Unsecured Claims filed on October 23, 2024 [D.I. 19] is attached hereto as Exhibit "4" and made a part hereof.

14.    That being said, the Debtor's credit report (the "Credit Report") and his testimony at the 11 U.S.C. § 341(a) meeting of creditors reflect the following joint debt in the aggregate amount of $66,494.00 (collectively, the "Joint Debt"):

(a)    Aqua Finance, Inc. = $5,956.00;

(b)    First Mark Services = $54,409.00 and

(c)    Franklin Mint FCU = $6,129.00.

The relevant portions of the Credit Report reflecting the Joint Debt is attached hereto as Exhibit "5" and made a part hereof.

15.    In addition to the Joint Debt, there may be additional joint obligations owed by the Debtor and Mrs. Marshman.

16.    The Debtor's Bankruptcy Schedules reflect that the obligation owed to First Mark Services is not joint, contingent, unliquidated or disputed. *See*, Exhibit "4".

17.    The debt owed to Aqua Finance and Franklin Mint FCU was not disclosed by the Debtor in his Bankruptcy Schedules but they appear on the Credit Report. *See*, Exhibits "4" and "5".

18.    As of the date of this Objection, Quantum3 Group LLC has filed a proof of claim

3

on behalf of Aqua Finance, Inc. in the amount of 6,281.79 at Claim No. 4-1. Claim No. 4-1 is attached hereto as Exhibit "6" and made a part hereof.

19. Claim No. 4-1 is clearly a joint obligation owed by the Debtor and Mrs. Marshman. *See*, Exhibit "6".

**E.     The Objection to the Debtor's Exemptions filed by the Trustee.**

20. On December 24, 2024, the Trustee filed the Objection of Lynn E. Feldman, Chapter 7 Trustee, to the Debtor's Claim of Exemptions (the "Exemption Objection") [D.I. 25].

21. As set forth in the Exemption Objection, the exemption claimed by the Debtor in the Real Property is not valid in light of the Joint Debt. *See, e.g., See, Napotnik v. Equibank and Parkvale Sav. Ass'n*, 679 F.2d 316, 319 (3d Cir. 1982); *In re Houck*, 184 B.R. 21, 22 (Bankr. E.D. Pa. 1995); *In re Garafano*, 99 B.R. 624, 634-635 (Bankr. E.D. Pa. 1989); *In re Maloney*, 146 B.R. 168, 171 (Bankr. W.D. Pa. 1992); *Sumy v. Schlossberg*, 777 F.2d 921, 928 (4th Cir. 1985); *In re Cordova*, 73 F.3d 38, 40 (4th Cir. 1996); *In re Pepenella*, 103 B.R. 299, 302 (M.D. Fla. 1988).

22. The Exemption Objection is currently pending before this Honorable Court.

**F.     The Debtor's Monthly Income and Expenses.**

23. The Debtor's Schedule I: Your Income and Schedule J: Your Expenses filed on the Petition Date reflected that the Debtor and Mrs. Marshman had *negative* monthly net income in the amount of $4,886.54.

24. The Debtor's Amended Schedule I: Your Income and Amended Schedule J: Your Expenses filed on December 30, 2024 [D.I. 29] reflect that the Debtor and Mrs. Marshman now allegedly have positive monthly net income in the amount of $588.32. The Debtor's Amended Schedule I: Your Income and Amended Schedule J: Your Expenses are attached hereto as Exhibits "7" and "8", respectively, and made a part hereof.

25. The Trustee's Declaration in Opposition to the Motion is attached hereto as Exhibit "9" and made a part hereof.

G. **The Motion filed by the Debtor.**

26. On December 27, 2024, the Debtor filed the Motion [D.I. 27].

27. The Motion states, *inter alia*, that Mrs. Marshman has gained employment, the household expenses have been reduced and that they now have disposable monthly income in the amount of $588.32 to fund a Chapter 13 Plan.

*See*, Motion.

## OBJECTION

28. The Trustee respectfully seeks the entry of an Order denying the Motion.

I. **Standard for Conversion from Chapter 7 to Chapter 13 under 11 U.S.C. § 706(a).**

29. There is no absolute right to convert a bankruptcy proceeding from Chapter 7 to Chapter 13 under 11 U.S.C. § 706(a). *See, Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007).

30. Section 706(a) of the Bankruptcy Code provides that a "debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." *See*, 11 U.S.C. § 706(a).

31. Controlling case law instructs that Section 706(a) cannot be read on its own and must be read in conjunction with Section 706(d). *See, Marrama,* 127 S. Ct. at 1110.

32. Section 706(d) of the Bankruptcy Code states: "Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title **unless the debtor may be a debtor under such chapter.**" *See*, 11 U.S.C. § 706(d) *(emphasis added)*.

5

33. As such, 11 U.S.C. § 706(d) conditions a debtor's right to convert on his or her ability to qualify as "a debtor" under Chapter 13. *See, Marrama*, 127 S. Ct. at 1110.

34. A good faith analysis must be performed to determine whether or not to convert a bankruptcy case from Chapter 7 to Chapter 13. *See, Marrama*, 127 S. Ct. at 1110-1113. *See also, In re Piccoli*, 2007 U.S. Dist. LEXIS 72533, 2007 WL 2822001, *6 (E.D. Pa. 2007).

35. The Third Circuit recognizes that "the good faith inquiry is a fact intensive determination ..." *See, In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996) (*quoting In re Love*, 957 F.2d 1350, 1355 (7th Cir.1992)).

36. In *Marrama*, the Supreme Court declined to articulate exactly what conduct qualifies as bad faith sufficient to permit a bankruptcy judge to dismiss a case or deny conversion from Chapter 7. *See, Marrama*, 127 S. Ct. at 1112 n.11.

37. The Third Circuit has held that a debtor bears the burden of establishing good faith. *See, Integrated Telecom Express, Inc.*, 384 F.3d 108, 114 (3d Cir. 2004). *See also, Piccoli*, 2017 U.S. Dist. LEXIS 72533, at *11.

38. The Third Circuit has recognized that "good faith is a term incapable of precise definition." *See, Lilley*, 91 F.3d at 496.

39. In the Third Circuit, bankruptcy courts reviewing motions to convert under §706(a) generally follow the "totality of the circumstances" analysis for bad faith articulated by the Third Circuit in *In re Lilley*, 91 F.3d 491 (3d Cir. 1996), where the court addressed bad faith warranting dismissal of a chapter 13 case "for cause" under § 1307(c) of the Bankruptcy Code. *See, Piccoli*, 2007 U.S. Dist. LEXIS 72533, at *16-*17 (*citing Pakuris*, 262 B.R. at 335; *In re Porreco*, 333 B.R. 310 (W. D. Pa. 2005)).

40. Applying the *Lilley* totality of the circumstances test to conversion, the *Pakuris* court articulated the considerations as follows:

    (a) whether the debtor is seeking to convert to chapter 13 in good faith (including a review of facts such as the timing of the motion to convert; the debtor's motive in filing the motion; and whether the debtor has been forthcoming with the bankruptcy court and creditors);

    (b) whether the debtor can propose a confirmable chapter 13 plan;

    (c) the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion;

    (d) the effect of conversion on the efficient administration of the bankruptcy estate; and

    (e) whether conversion would further an abuse of the bankruptcy process.

*See, Pakuris*, 262 B.R. at 335-336. *See also, In re Campbell*, 598 B.R. 775, 778-79 (Bankr. M.D. Pa. 2019).

## II. Conversion from Chapter 7 to Chapter 13 is not Warranted under the Facts of this Case.

41. Applying these strictures to the case at hand, the Debtor's conversion request must be denied.

### (1) The Debtor is not seeking to Convert to Chapter 13 in Good Faith.

42. The Debtor filed the Motion more than three (3) months after the Petition Date.

43. The Debtor filed the Motion after the Trustee filed the Exemption Objection.

44. The Debtor did not disclose the joint obligations owed to Aqua Finance and Franklin Mint FCU in his Bankruptcy Schedules. *See*, Exhibits "4" and "5".

45. The Debtor did not disclose that the obligation owed to First Mark Services was a joint obligation owed by the Debtor and Mrs. Marshman. *See, Id.*

7

46. Quite simply, the Debtor has not been forthcoming with the Bankruptcy Court and creditors.

47. The Debtor only filed the Motion after the Trustee retained counsel to liquidate the Real Property for the benefit of the Debtor's bankruptcy estate.

48. A debtor's attempt to convert from Chapter 7 to Chapter 13 is not made in good faith when there is "suspicious" timing given that it was sought only after the debtor learned that a chapter 7 trustee intended to pursue the equity in a home. *See, Piccoli*, 2007 U.S. Dist. LEXIS 72533, at *19-*20.

**(2)    The Debtor cannot propose a Confirmable Chapter 13 Plan.**

49. As set forth herein, the Debtor's alleged net monthly income is $588.32. *See*, Exhibits "7" and "8".

50. Using the Debtor's fair market value of the Real Property, the mortgage amount and half of the sale proceeds going to Mrs. Marshman, there is equity in the Real Property in the amount of $96,500.00 for the benefit of the Debtor's bankruptcy estate.

51. As set forth herein, the Joint Debt is in the aggregate amount of $66,494.00.

52. If the Debtor were to pay all of his household's alleged net monthly income pursuant to a Chapter 13 Plan for five (5) years, this would only result in a payment of $35,299.20 when he is required to pay the sum of at least $66,494.00.

53. Quite simply, the Debtor does not have sufficient monthly income to comply with the provisions of 11 U.S.C. § 1325(a)(4).

54. As such, the Debtor cannot propose a confirmable Chapter 13 Plan.

**(3)    Prejudice to Creditors.**

55. Creditors will be severely prejudiced if the Debtor's conversion request is granted.

56. The Debtor does not have enough net monthly income to fund a Chapter 13 Plan in accordance with 11 U.S.C. § 1325(a)(4).

57. The only hope for recovery to creditors will come from the liquidation of the Real Property with proceeds in the approximate amount of $96,500.00.

**(4) The Effect of Conversion on the Administration of the Bankruptcy Estate.**

58. The Trustee can expeditiously liquidate the Real Property for the benefit of the Debtor's bankruptcy estate.

59. Conversion of this case to Chapter 13 would significantly delay the administration of the Debtor's bankruptcy estate to the detriment of the creditors and put them at risk of non-payment.

**(5) Conversion would be a Further Abuse of the Bankruptcy Process.**

60. As set forth herein, the Debtor only filed the Motion after the Trustee filed the Exemption Objection.

61. The Debtor did not disclose the joint obligations owed to Aqua Finance and Franklin Mint FCU in his Bankruptcy Schedules. *See*, Exhibits "4" and "5".

62. The Debtor did not disclose that the obligation owed to First Mark Services was a joint obligation owed by the Debtor and Mrs. Marshman. *See*, *Id.*

63. Allowing the Debtor to convert this proceeding would clearly be another abuse of the bankruptcy process.

64. Quite simply, the Debtor has misled this Court, the Trustee and creditors.

65. No party in interest would benefit from the Debtor converting his case to Chapter 13.

66. In fact, the entire creditor body will be negatively impacted in the event of conversion.

67. The Trustee is clearly in the best position to liquidate the Real Property for the benefit of the Debtor's bankruptcy estate and creditors.

## CONCLUSION

68. For all of the reasons set forth herein, the Debtor's conversion request must be denied.

**WHEREFORE,** the Trustee respectfully requests the entry of an Order (a) denying the Motion and (b) granting such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

**KARALIS PC**

By: /s/ Robert W. Seitzer
ROBERT W. SEITZER
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
rseitzer@karalislaw.com

*Attorneys for the Trustee*

Dated: January 20, 2025